1    **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9    Thomas L. Spear,                    )        CIV. 11-1742-PHX-PGR
                                         )
10              Plaintiff,               )        **ORDER**
                                         )
11   v.                                  )
                                         )
12   United States of America,           )
                                         )
13              Defendant.               )
     _____)

14

15          Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 23.) Plaintiff

16   contends that he is entitled to summary judgment on his quiet titled claim based on the

17   doctrine of equitable subrogation. The United States asks the Court to refuse the motion or

18   grant a continuance under Rule 56(d) of the Federal Rules of Civil Procedure so that it can

19   conduct discovery before responding to the motion. (Doc. 25.)

20          **Background**

21          At issue is real property located in Maricopa County. Dennis Carlson owned the

22   property at the time of his death in 2007. He had a loan on the property with TCF Bank

23   ("TCF Loan"). The TCF loan was recorded on June 22, 2006. On August 15, 2008, Plaintiff

24   purchased the property from Carlson's estate for $800,000. To fund the purchase, Plaintiff

25   obtained a loan of $417,000 ("Taylor Loan"). The Taylor Loan was used to satisfy the TCF

26   Loan. On December 10, 2009, Plaintiff refinanced the Taylor Loan with a loan from

27   Imortgage.com ("ICOM Loan"). The ICOM Loan was used to satisfy the Taylor Loan. On

28   May 10, 2010, Plaintiff received a notice from the IRS that it was going to seize the property

1  in order to satisfy the tax liability of the Carlson estate. Carlson's estate had a tax liability of

2  $2.2 million at the time of his death, on July 2, 2007, at which point an estate tax lien was

3  automatically created. On September 2, 2011, Plaintiff filed a complaint to quiet title. (Doc.

4  1.) He filed an amended complaint on March 5, 2012. (Doc. 20.)

5  **Equitable subrogation**

6  "The doctrine of equitable subrogation allows a person who pays off an encumbrance

7  to assume the same priority position as the holder of the previous encumbrance." *Mort v.*

8  *United States*, 86 F.3d 890, 893 (9th Cir. 1996). Plaintiff contends that the ICOM loan is

9  subrogated to the TCF loan, which had priority over the estate tax lien. (Doc. 23 at 2–3.) The

10  United States argues that equitable subordination does not apply because the ICOM Loan did

11  not pay off the TCF Loan, which had been discharged and was no longer in existence when

12  the ICOM Loan was recorded. (Doc. 25 at 5.)

13  "Equitable subrogation is a state-law doctrine," so whether the doctrine applies in this

14  case is a matter of Arizona law. *Mort*, 86 F.3d at 893. In *Sourcecorp, Inc. v. Norcutt*, 229

15  Ariz. 270, 274 P.3d 1204, 1207 (2012), the Arizona Supreme Court, acknowledging that

16  "[t]here is thus some ambiguity in Arizona case law regarding the test for equitable

17  subrogation,"adopted the test set forth in the Restatement (Third) of Property, § 7.6.[1] "Under

18  the Restatement test, a person who 'fully performs an obligation of another, secured by a

19  mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent

20  necessary to prevent unjust enrichment.'" *Id.* (quoting Restatement § 7.6). The court

21  explained that "equitable relief may be appropriate, for example, if the person seeking

22  subrogation expected to receive a security interest in the real estate with the priority of the

23

24  [1] Previous formulations of the test in Arizona stated that subrogation occurs if (1) a

25  third person discharges an encumbrance on the property of another, (2) the person is not a
volunteer, and (3) there is an express or implied agreement "that he will be substituted in

26  place of the holder of the encumbrance." *Peterman-Donnelly Eng'rs & Contractors Corp.*

27  *v. First Nat'l Bank of Ariz.,* 2 Ariz.App. 321, 325, 408 P.2d 841, 845 (1965); see *Lamb*
*Excavation, Inc. v. Chase Manhattan Mortg. Corp.*, 208 Ariz. 478, 480–82, 95 P.3d 542,

28  544–46 (App. 2004).

1 mortgage being discharged." *Id.* The court held that application of equitable subrogation does

2 not depend whether on the person invoking the doctrine is a "volunteer" and does not require

3 an express or implied agreement. *Id.* at 1208. The court recognized that "equitable

4 subrogation depends on the facts of the particular case." *Id.* at 1206 (quoting *Mosher v.*

5 *Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935)).

6    **Rule 56(d)**

7    Under Rule 56(d) (formerly Rule 56(f)), when a "nonmovant shows by affidavit or

8 declaration that, for specified reasons, it cannot present facts essential to justify its

9 opposition" to a motion for summary judgment, the court may "(1) defer considering the

10 motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or

11 (3) issue any other appropriate order." The party opposing summary judgment must make

12 a timely request and clearly show "what information is sought and how it would preclude

13 summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). The requesting

14 party must set forth in affidavit form the specific facts it hopes to elicit from further

15 discovery and show that the facts sought exist are essential to oppose summary judgment.

16 *Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d

17 822, 827 (9th Cir. 2008).

18    **Discussion**

19    The United States's request is timely. Where a summary judgment motion is filed

20 early in the litigation before a party has had a realistic opportunity to pursue discovery

21 relating to its theory of the case, district courts should grant a Rule 56(d) motion "fairly

22 freely." *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck*

23 *Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *see Metabolife Int'l, Inc. v. Wornick*, 264

24 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56(f) facially gives judges the discretion to

25 disallow discovery when the non-moving party cannot yet submit evidence supporting its

26 opposition, the Supreme Court has restated the rule as requiring, rather than merely

27 permitting, discovery 'where the non-moving party has not had the opportunity to discover

28

1    information that is essential to its opposition.'") (citing *Anderson v. Liberty Lobby, Inc.*, 477

2    U.S. 242, 250 n.5 (1986)).

3        Plaintiff filed its First Amended Complaint on March 5, 2012. The United States filed

4    its Answer on March 19. (Doc. 21.) Plaintiff filed his Motion for Summary Judgment 10 days

5    later, on March 29. (Doc. 23.) The deadline for the completion of discovery is September 24,

6    2012. (Doc. 17.) Dispositive motions are due by October 19. (*Id.*)

7        The United States has submitted a declaration by its counsel, Kaycee Sullivan. (Doc.

8    25, Ex. 1.) The declaration indicates that the only discovery completed in this case is the

9    exchange of initial disclosures. (*Id.*, ¶ 6.) This disclosure included documents from the

10   escrow files of the real estate transactions at issue, along with documents from related

11   litigation in Minnesota, in which Plaintiff is suing Bryon Bequette, the representative of the

12   Carlson estate, for failing to pay the estate tax lien on the property. *Id.*

13       The Sullivan declaration sets forth the facts the United States hopes to elicit and why

14   they are essential to its defense. (Doc. 25, Ex. 1.) According to the declaration, the United

15   States has a good faith belief that further discovery will reveal relevant facts concerning the

16   "applicability of the doctrine of equitable subrogation in the case." (*Id.*, ¶ 13.) The sought-

17   after information "is necessary in evaluating the parties' knowledge of potentially competing

18   lien priority claims and the equitable remedies available." (*Id.*, ¶ 12. )

19       The United States seeks copies of the escrow files of the underlying real estate

20   transactions and intends to depose Plaintiff regarding his knowledge of the estate tax lien

21   prior to entering into the real estate transactions at issue. (*Id.*, ¶¶ 6, 11.) It will also depose

22   Plaintiff about his efforts to obtain damages from Bequette, as well as his efforts to file a

23   claim or receive proceeds from a title insurance policy. (*Id.*, ¶ 9.) The United States also

24   intends to depose Bequette and subpoena documents from the title insurance company. (*Id.*,

25   ¶¶ 8, 12.)

26       The United States asserts that this information is necessary for a determination of the

27   equities of the case and to rebut factual allegations made by Plaintiff. For example, Plaintiff

28

1  contends that he purchased the property without knowledge of the tax lien and that he and

2  his lenders intended the deeds to maintain a first position secured interest in the property, as

3  evidenced by loan documents and escrow instructions. (Doc. 23 at 5–6.)

4      In *Sourcecorp*, the Arizona Supreme Court held that neither the plaintiff's status as

5  a "volunteer" nor the absence of an agreement is a categorical bar to application of equitable

6  subrogation. 274 P.3d at 1208. Nevertheless, application of the doctrine depends on the

7  specific facts of the case, *id.* at 1206, and the United States has identified questions relevant

8  to the equities involved, particularly questions concerning Plaintiff's intent and expectations

9  when purchasing the property. *See In re Mortgages Ltd.*, 459 B.R. 739, 742 (Bkrtcy.D.Ariz.

10 2011) (denying summary judgment based on conflicting facts as to the existence of an

11 agreement to subrogate).

12 **Conclusion**

13 Plaintiff's motion for summary judgment was filed just 10 days after the United States

14 answered the First Amended Complaint. The parties are still involved in discovery. Because

15 the United States has identified specific, material facts that it may elicit from discovery,

16 which are essential to its opposition to the motion for summary judgment, *see Family Home*

17 *& Finance Center*, 525 F.3d at 827, the court will grant the United States' request for relief

18 under Rule 56(d).[2]

19     Accordingly,

20 / / /

21 / / /

22 / / /

23

24

25     [2] Plaintiff asserts that pursuant to LRCiv. 56.1(b)(1), the Court must accept as true the
facts set forth in his statement of facts because the United States did not controvert them in

26 its response to the summary judgment motion. (Doc. 26 at 6–7.) This argument is not well
taken, given that the United States is seeking relief under Rule 56(d). Without having

27 conducted discovery, the United States is not in a position to contest Plaintiff's factual
assertions. (*See* Doc. 25 at 3 n.1.)

28

1        IT IS HEREBY ORDERED granting the United States' request for relief under Rule

2   56(d) (Doc. 25). The United States shall respond to Plaintiff's motion for summary judgment

3   no later than September 24, 2012.

4        DATED this 6th day of June, 2012.

5

6

Paul G. Rosenblatt
7                                        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28