**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas L. Spear, ) | CIV. 11-1742-PHX-PGR |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Before the Court are Plaintiff Thomas Spear's Motion for Summary Judgment and Second Motion for Summary Judgment (Docs. 23, 33) and Defendant United States' Cross-motion for Summary Judgment (Doc. 35). The motions are fully briefed. For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (Doc. 23) is granted.

## BACKGROUND

At issue is real property located in Maricopa County. Dennis Carlson owned the property at the time of his death, on July 2, 2007.[1] The property was subject to an estate tax lien, which arose at the time of Carlson's death pursuant to 26 U.S.C. § 6324.

Carlson had a loan on the property with TCF Bank ("TCF loan"). The TCF loan was recorded on June 22, 2006, and had priority over the federal estate tax lien.

On August 15, 2008, Plaintiff purchased the property from Bryon Bequette,

---

[1] Unless otherwise indicated, the facts set forth herein are based on the stipulated facts in the parties' Joint Case Management Report. (Doc. 14 at 8–9.)

representing the Carlson estate, for $800,000. The sale paid off the TCF loan. The net proceeds of the sale, some $245,000, were paid to Bequette. To fund the purchase Plaintiff obtained a loan of $417,000 from Taylor, Bean & Whitaker Mortgage Corp. ("Taylor loan"). The Taylor Loan was recorded on August 26, 2008. Plaintiff refinanced the Taylor loan with a loan from Imortgage.com ("ICOM loan"), which was recorded on December 14, 2009. Plaintiff had title insurance on the transaction to purchase the property, but the title insurance company failed to discover the federal tax lien. It is undisputed that Plaintiff had no knowledge of the federal lien.[2]

On May 10, 2010, Plaintiff received a notice from the IRS that it was going to seize the property in order to satisfy the tax liability of the Carlson estate—some $2.2 million at the time of Carlson's death. On September 2, 2011, Plaintiff filed a complaint to quiet title. (Doc. 1.) He filed an amended complaint on March 5, 2012. (Doc. 20.)

Plaintiff contends that he is entitled to summary judgment on his quiet title claim based on the doctrine of equitable subrogation. (Doc. 23.) He also argues, in his Second Motion for Summary Judgment, that he is entitled to judgment under 26 U.S.C. § 6323 because the United States failed to properly record its tax lien on the property. (Doc. 33.)

**DISCUSSION**

**1.     Summary judgment**

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[2] Plaintiff filed a claim with his title insurance company for failing to discover the federal estate tax lien. (Doc. 35, Ex. 2, ¶ 8.) He also filed a complaint against the Carlson estate and Mr. Bequette in Minnesota. (*Id.*, ¶ 11.)

- 2 -

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it need not to disprove the claim. *Id.*; Fed.R.Civ.P. 56(c). If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

**2.     Equitable subrogation**

The Internal Revenue Code provides that "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2). "The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996); *see Han v. United States*, 944 F.2d 526, 529 (9th Cir. 1991). Equitable subrogation is a state-law doctrine, so whether doctrine applies in this case is a matter of Arizona law. *Id.*

In *Sourcecorp, Inc. v. Norcutt*, 229 Ariz. 270, 273, 274 P.3d 1204, 1207 (2012), the Arizona Supreme Court adopted the test set forth in the Restatement (Third) of Property, § 7.6. "Under the Restatement test, a person who 'fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment.'" *Id.* (quoting Restatement § 7.6). The court explained that "equitable relief may be appropriate, for example, if the person seeking

- 3 -

subrogation expected to receive a security interest in the real estate with the priority of the mortgage being discharged." *Id.* The court held that application of equitable subrogation does not depend whether on the person invoking the doctrine is a "volunteer" and does not require an express or implied agreement. *Id.* at 1208.

The court recognized that "equitable subrogation depends on the facts of the particular case." *Id.* at 1206 (quoting *Mosher v. Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935)). "The Restatement appropriately focuses on other circumstances of the party seeking to invoke subrogation, including whether the party has paid a preexisting obligation to protect the party's interest in the property." *Id.* at 1208. Equitable subrogation "will be recognized only if it will not materially prejudice the holders of intervening interests." *Id.* at 1209 (quoting Restatement § 7.6 cmt. e).

Plaintiff argues that the under the doctrine of equitable subrogation as set forth in *Sourcecorp* and the Restatement, the ICOM loan is subrogated to the position of the TCF loan, giving it priority over the United States' federal estate tax lien. (Doc. 23.) The United States concedes that under Arizona law, equitable subrogation would apply to subrogate the ICOM loan to the Taylor loan, and that the doctrine would have applied to subrogate the Taylor loan to the TCF loan. (Doc. 35 at 9.) It asserts, however, that there is "no support" for subrogating the ICOM loan to the TCF loan, because the ICOM loan did not pay off the TCF loan and the ICOM loan lienholder had no reasonable expectation to be subrogated to the position of the TCF loan. (*Id.*)

Plaintiff replies that the "fact that the transaction at issue occurred in two steps makes no logical or legal difference." (Doc. 40 at 5.) The Court agrees. The United States advances no principled basis for distinguishing this scenario from those in which equitable subrogation has been found applicable. *See United States v. Avila*, 88 F.3d 229, 237–38 (3rd Cir. 1996) (holding that subsequent purchasers of property were derivatively equitably subrogated to senior lien holders whose liens were satisfied with vendor's purchase money).

- 4 -

Plaintiff also contends that the United States is not prejudiced because when the tax lien attached, it was junior to the TCF loan. The Court agrees. Application of equitable subrogation in this case leaves the United States "no worse off, since its lien was the junior lien at the time it was filed." *Van Dyk Mortgage Corp.*, 503 F.Supp.2d 876, 887 (W.D.Mich. 2007); *see Lamb Excavation, Inc. v. Chase Manhattan Mortg. Corp.*, 208 Ariz. 478, 483, 95 P.3d 542, 547 ("We fail to comprehend the nature of the perceived prejudice or inequity, as it appears the lienholders would remain in the *same* position they occupied before subrogation."); Restatement § 7.6 cmt. e ("The holders of . . . intervening interests can hardly complain [about subrogation]; their position is not materially prejudiced, but is simply unchanged.").

The United States next contends that equities favor its argument, because a ruling for Plaintiff denies the Unites States "the benefit of moving up as a junior creditor as is normally provided in the operation of the lien system." (Doc. 35 at 9.) This argument is not persuasive. As the Arizona Supreme Court explained in *Sourcecorp*, "preventing a junior lienholder from advancing in priority is an intended consequence of equitable subrogation." 229 Ariz. at 276, 274 P.3d at 1210

The United States further argues that it would be prejudiced by allowing the ICOM loan to be subrogated to the position of the original TCF loan because it was entitled to the proceeds of the sale of the property, which instead went to Mr. Bequette, and it now has a reasonable expectation that its lien would move up into the senior lien position. (Doc. 35 at 9–11.) According to the United States, this intervening inequity precludes the application of equitable subrogation.

In support of this argument, the United States cites *Gregory v. United States*, No. 1:12-cv-00042, 2012 WL 5426533 (W.D.Va. Nov. 7, 2012). In *Gregory*, the Watsons, a married couple, owned the property at issue. In 1994, they received a loan from Highlands Union Bank, secured by a deed of trust on their property. *Id.* at *1. In 2002, the IRS filed a

- 5 -

proper notice of federal tax lien in the amount of $199,764 against Mr. Watson, attaching to his one-half undivided interest in the property. *Id.* In 2003, the Watsons deeded the property to their daughter-in-law Tammy Watson, who assumed the mortgage with Highlands Union Bank. In 2006, she sold the property to the Gregorys for $225,000. *Id.* As part of the sale, there was paid to Highlands Union Bank the sum of $105,000 in satisfaction of the outstanding mortgage, with the balance going to the daughter-in-law. *Id.* The Gregorys financed the purchase with their own funds and a mortgage loan from TriSummit Bank in the amount of $92,000. *Id.*

After investing $100,000 in improvements, the Gregorys entered into a contract to sell the property for $380,000. *Id.* at *2. At that point they finally discovered the tax lien. The IRS refused to discharge it for less than $190,000, representing one-half of the sales price of the property. *Id.*

The Gregorys filed suit, asking the court to apply the doctrine of equitable subrogation to determine the value of a federal tax lien attached to their property. They argued that the IRS should be put back in the position it was in at the time that the Gregorys bought the property in 2006. *Id.* If the tax lien been discovered then, and the Gregorys had purchased the property, the lien would have been paid, but in the amount of $60,000 rather than $190,000. *Id.*

The court granted the IRS' motion to dismiss. It first noted that the facts of the case were "far different from the situations in which this equitable doctrine has been applied" because the "Highlands Union Bank mortgage was not paid in order that the Gregorys be substituted as lien creditors [but] as a condition of the sale in order to relieve the seller of the obligation and to clear the title to the property." *Id.* at *3. In addition, TriSummit Bank was not the party seeking subrogation, as it has been paid out of the proceeds of the Gregorys' sale of the property. *Id.*

The court further found that equitable subrogation was inapplicable because the IRS

- 6 -

1 was prejudiced by an "intervening inequity" when the balance of the purchasing funds that remained after paying the first mortgage was paid to Tammy Watson rather than to the IRS. *Id.* at 3. Therefore, the IRS would have been prejudiced by reinstating the prior lien. *Id.*

The United States contends a similar inequity occurred here, when the net proceeds of Carlson property went to Mr. Becquette rather than being applied to the estate tax lien. According to the United States, this inequity is sufficient to prevent the application of equitable subrogation in this case.

The Court disagrees. *Gregory* is not persuasive authority to deny the application of equitable subrogation in this case. "Equitable subrogation is an equitable doctrine, the purpose of which is to prevent injustice." *Sourcecorp, Inc. v. Norcutt*, 227 Ariz. 463, 467, 258 P.3d 281, 285 (App. 2011) (citing *Mosher*, 45 Ariz. at 468, 46 P.2d at 112)). In this case, the equities substantially favor Plaintiff.

The federal estate tax lien at issue arose automatically under 26 U.S.C. § 6324 at the time of Mr. Carlson's death. Unlike the lien in *Gregory*, it was not recorded. As previously noted, § 6323(i)(2) provides for the application of equitable subrogation under Arizona law with respect to a lien imposed under § 6231 or § 6234. Under Arizona law, equitable subrogation may apply where the person seeking subrogation expected to receive a security interest in real estate with the priority of the mortgage being discharged. *Sourcecorp*, 229 Ariz. at 273, 274 P.3d at 1207. Notwithstanding the ruling in *Gregory*, the Court finds there is no intervening inequity that would prevent the application of equitable subrogation in this case.

The doctrine of equitable subrogation has been used by courts to allow an interest arising after a federal tax lien to be subrogated to the rights of a prior, senior lienholder. In *Han*, the Hans purchased a piece of residential property that was encumbered by a properly recorded federal tax lien. 944 F.2d at 527. The Hans' real estate agent was aware of the lien but did not inform the Hans. *Id.* at 527–28. After the Hans purchased the property, the IRS

- 7 -

levied on it to satisfy the tax lien. *Id.* at 528. The Ninth Circuit held that the doctrine of equitable subrogration could be used to permit the Hans to be equitably subrogated to all liens and encumbrances recorded prior to the tax lien. *Id.* at 530. The Court explained:

> We are unimpressed by the IRS's repeated claims that its victory would neither unjustly enrich nor produce a windfall in favor of the United States. One cannot fail to see this case as an attempt by the IRS to require the [grantee] to pay a portion of [grantor]'s delinquent taxes. The IRS's claim that equitable subrogation would make it the victim of 'injustice' is thoroughly unconvincing.

*Id.*, n.3; *see Mort*, 86 F.3d at 895 ("If the Morts are equitably subrogated to the priority position of the Kern mortgage, the IRS will be in the same position it was in at the time the tax lien was filed. If equitable subrogation is denied, however, the government will receive a windfall, moving up to a better position than it originally had.")

In *Avila*, the Third Circuit held that the second purchasers of a property subject to a federal lien were entitled to equitable subrogation. The Avilas purchased property from Mrs. Sylvester that was subject to a federal tax lien. 88 F.3d at 231. The Avila's title insurance company mistakenly believed the federal tax lien had expired. *Id.* As a consequence, Mrs. Sylvester did not use the proceeds of the sale to pay off the lien. *Id.* The United States filed a complaint against the Avilas and their mortgagee seeking to foreclose the tax lien. *Id.* at 232. The Avilas then sold the property to the Diemers. *Id.* The United States filed an amended complaint joining the Diemers and their mortgagee. *Id.*

The Diemers argued that they were entitled to equitably subrogate to the position of the lienors whose debts were satisfied when Mrs. Sylvester sold the property to the Avilas. *Id.* at 236. The court agreed, explaining that "the IRS would be as unjustly enriched by denying equitable subrogation to the Diemers as it would have been if equitable subrogation had been denied the Avilas." *Id.* at 238 (citing *Han*, 944 F.2d at 530, n.3.))

In *Dietrich Industries, Inc. v. United States*, 988 F.2d 568 (5th Cir. 1993), the owner of real property executed a deed of trust on real property in favor of Broadlands Limited to secure a $2,000,000 debt. *Id.* at 570. Subsequently, the IRS filed two federal tax liens on the

property. *Id.* Shortly thereafter, Dietrich Industries purchased the property from the original owner for $385,000. *Id.* Proceeds from the sale of about $320,000 were paid to Broadlands in consideration for Broadlands's release of its lien. *Id.* The court held that Dietrich was entitled to subrogate to Broadlands's status as senior lienholder and obtain priority over the federal tax liens. *Id.* at 572. The court reasoned that "[d]enying equitable subrogation would give the government an unearned windfall in that it would elevate the government's liens for no good reason." *Id.* at 573.

Other courts have applied equitable subrogation to find that a mortgagee had priority against an intervening tax federal tax lien. *See, e.g.*, *Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1237 (1st Cir. 1996); *The Sum of $66,839.59 Filed in Registry of Court v. United States Internal Revenue Service*, 119 F.Supp.2d 1358 (N.D.Ga. 2000), and *Van Dyk Mortgage Corp.*, 503 F.Supp.2d 876 (W.D.Mich. 2007).

These decisions support the application of the equitable subrogation in this case. They are more persuasive than *Gregory*, where application of the doctrine would have prejudiced the IRS by reducing the amount paid on the tax lien when the Gregorys sold the property. No such intervening inequity exists in this case.

## **CONCLUSION**

For the reasons stated above, Plaintiff is entitled to equitable subrogation. The undisputed material facts show that "expected to receive a security interest in the real estate with the priority of the mortgage being discharged." *Sourcecorp*, 229 Ariz. at 273, 274 P.2d at 1207. The equities favor Plaintiff, who purchased the property with no knowledge of the federal estate tax lien. Application of the doctrine leaves the United States in the same position it occupied when the tax lien arose.

Having granted Plaintiff's motion for summary judgment on the grounds of equitable subrogation, the Court denies as moot his Second Motion for Summary Judgment and denies the United States' Cross-motion for Summary Judgement.

Accordingly,

**IT IS HEREBY ORDERED** granting Plaintiff's Motion for Summary Judgment (Doc. 23).

**IT IS FURTHER ORDERED** denying the United States' Cross-motion for Summary Judgment (Doc. 33) and denying as moot Plaintiff's Second Motion for Summary Judgment (Doc. 35).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

DATED this 4th day of March, 2013.

*[signature]*
Paul G. Rosenblatt
United States District Judge